Move to the last case this morning, U.S. v. Medina. Good morning. May it please the court. My name is John Birdsall, and I represent the appellant Orlando Medina. Mr. Medina asks two minutes to be reserved for rebuttal. This case boils down to whether we allow known lies to support criminal convictions. The district court committed plain error when it denied Mr. Medina's Rule 29 motion and subsequently entered a finding of guilt. Mr. Medina respectfully asked this court to reverse the district court's findings for two reasons. One, the district court unlawfully admitted and used exhibits 17 to 20 in both its Rule 29 decision and its ultimate verdict. And two, the government violated Mr. Medina's due process rights when it elicited, introduced, and argued evidence it should have known was false. To my first point, this conviction rests, according to the One is the receipts that were claimed to have been found on the morning of October, excuse me, August 19th, 2014 in Puerto Rico that purport to show mailings between Milwaukee and Puerto Rico. Two, the testimony of Rodolfo Duenas, who claimed he and Mr. Medina would mail drugs back and forth. And three, Mr. Medina's fingerprints on the packaging of cocaine found when they arrested Mr. Duenas. The first two of these pillars have to fall. And with them, Mr. Medina's conviction. The mail receipts and Mr. Duenas' testimony were used by both the government and the district court to corroborate each other, but independently are inherently untrustworthy. The receipts, as I put through in my brief at length, were that they were found in Mr. Medina's car on August 19th, 2014. But one of the receipts, Exhibit 20, so the exhibits are 17 through 20, one of the receipts, Exhibit 20, was patently not found that day because it was created that same day 3,000 miles away in Milwaukee, Wisconsin. So we know that that was a lie. And in a sheer act of convenience, both the government and the district court brush away Exhibit 20. They brush away that fact and they use the other three receipts as circumstantial evidence to support Mr. Duenas' claim that he and Officer Nunez-Rosado was crystal clear. Those, all four of those receipts were found together. He testified about them together. The government criticizes our argument as all or nothing, that you can't just, but they're right about that. It is all or nothing because you can't look at this testimony of this officer and separate the receipts that you want to believe in and decide that you don't like certain ones. It is all or nothing by the very language of Officer Nunez's testimony. He's the one that made it that way. And this is the focus of our claim of perjurious testimony. That part of this argument does not focus on Mr. Duenas. But as to Mr. Duenas, the district court itself found that, in the district court's words, he's a liar. He lied on the stand, he lied repeatedly, he lied about virtually everything. But then the district court used the three remaining receipts as a reason to find that, well, there's a sliver of hope in Mr. Duenas' testimony. Did he use the term sliver? No, no. Strictly my term. But the district court said that the three pre-seizure receipts were enough to support a finding that Mr. Duenas' testimony about working with Mr. Medina, that was enough to corroborate it, in the district court's words. So it's really a sleight of hand here by the district court and the government arguing the case. On the one hand, we're going to ignore the physical impossibility of Exhibit 20. That it's physically impossible for that to have been true testimony, and then go on and use the other three that were part of the exact same testimony. Then we're going to take Mr. Duenas' testimony that the district court made a specific finding of incredibility and unbelievability and lying, but then we're going to accept just that portion, the sliver, just that portion of his testimony that said, I work with Mr. Medina. And the reason we're going to accept that, the reason the district court accepts that, is because of the three receipts. So it's a circular sleight-of-hand corroboration upon corroboration. So in this court's case in United States versus Garcia last year, in the many cases that that case cites, speaks to the importance for a district court to examine, particularly in a Rule 29 motion, the missing gaps in evidence that a jury might pass over. Now this was a bench trial, so it's not precisely analogous, but it kind of is, because in essence we had two Rule 29 motions. But so that is what Mr. Medina is asking you to do. Examine the gaps here, and the big gap here is Exhibit 20, because Exhibit 20 takes away all the exhibits if we agree that that's a lot, that's perjurious testimony. And because those remaining exhibits were used to support Mr. Duenas's testimony, then that's the only way to get to finding an agreement that there was a conspiracy. So in other words, with no receipts, there's no agreement. There's nothing to corroborate Mr. Duenas's testimony. Neither the government nor the district court claim that the fingerprints alone provide that evidence. At most, the fingerprints are circumstantial evidence of possession with intent to deliver or mere presence, but not of an agreement to engage in a conspiracy. In other words, Mr. Duenas's claim that there's an agreement requires the use of the receipts, and using the receipts requires ignoring the blatant lie that was used to introduce them. That's the Garcia gap here, if you will. And it's very clear from both the Rule 29 decision and the later verdict that the cross-corroboration of the receipts to Duenas were the underpinning for the district court, in both the Rule 29 and the ultimate verdict. As to my second point, the due process violation, Mr. Medina satisfies all three of the Freeman prongs. Am I about out of time here? Yeah, about two minutes. Okay, I'll stop at two. The government, I'll skip to the important part, the government knew or should have known that this was false. They had three and a half years before this case went to trial to interview Officer Nunez-Rosado to find out what the deal was with Exhibit 20. Why, if he was going to get up and testify, why he would testify about something that's they had a duty to do that. And when they discovered it during trial, they just pushed on and decided they were just going to ignore it. And they just argued about the other three, the other three receipts and or just reduced it to calling it documentation. I'll reserve the rest of my time. Thank you. Good morning. May it please the court. My name is Jonathan Koenig. I appear on behalf of the United States this morning. I would like to address both the sufficiency of the evidence and the defendant's claim that his due process rights were violated contrary to the NAPU versus Illinois line of cases on the basis of perjured testimony that the government knowingly introduced. I'll have less to say about sufficiency of the evidence because the standard is so deferential and so familiar to this court. In order to throw out Medina's conviction, this court would have to conclude that even when the evidence is viewed in the light most favorable to the prosecution, it was irrational for Judge Pepper to find Mr. Medina guilty. But the verdict was rational and it was her careful weighing of the evidence. I refer you to pages 518 to 530 of the trial transcript where Judge Pepper lays out very carefully and thoughtfully her thought process behind the guilty verdict. Essentially she did state that she relied on the testimony of Rodolfo Duenas despite some of the problems with that testimony because it was corroborated by the fingerprint evidence on the inbound package of cocaine and three of the four mail receipts and I will get around to talking about Exhibit 20 in a moment but if you'll bear with me I'd just like to talk about sufficiency of the evidence a little bit more. The judge didn't find any reason to disregard the validity of that. That's what the receipts establish and they were found in his car after this sort of bizarre chase and shootout in Frederico. As for Duenas, the judge stated the fact that he is not believable in all respects does not mean that he is entirely incredible and some portions of his testimony were corroborated by other evidence in the case. The most significant piece of evidence being the fingerprints on the packaging material on the inbound package of cocaine and I would just add here because I may not have made it clear in our brief that Duenas identified Medina as the source of the package and his source of supply before the results of the fingerprint analysis were known. So if he was guessing he took a pretty good guess. In sum I would say that Judge Pepper's justification for the verdict was one that a rational juror could espouse and therefore should be upheld. Turning to the NAPU versus Illinois part of the case there are three elements to a NAPU claim as you've heard from opposing counsel there must be false testimony the government must have known or it should have known that it was false and importantly there must be a reasonable likelihood that the false testimony affected the judgment of the fact finder. Here of course it was a bench trial so we're talking about Judge Pepper and I don't want to be cavalier about this but there's nothing really unusual about a cooperating witness in a NAPU case. We put him on the stand notwithstanding those problems because the evidence did corroborate what he was saying and we never tried to run away from those problems or present him as a spotless kind of witness. So with Duenas we're very very far from the knowing use of false testimony in violation of due testimony and the problem is clear it bears a date that is inconsistent with having been found in Puerto Rico on August 19th. How this document came to be among the receipts presented to officer Rosado at trial is not reflected in the record and I can't offer you an explanation without going beyond the record or speculating but let's stick with what we do know. Defense counsel says that he had exhibit 20 for a long time as part of discovery but he did not cross-examine officer Rosado about the date discrepancy on exhibit 20. He did not request an evidentiary hearing. He did not even raise a proper objection to the admissibility of these mail receipts. In fact he raised the issue for the very first time during his closing argument which in this particular case occurred a couple of months after the close of the evidence. That's very significant because it flagged the issue for the finder fact. So even if we assume that the officer's testimony was false and that the government ought to have known this immediately Medina still has a big problem on them under the third part of the NAPU test requiring him to show a reasonable likelihood that the false testimony affected the judgment. Under this court's decision in Coleman a 2019 case which follows and cites an earlier en banc decision in Long versus Pfister the fact that the defense was aware of the issue with exhibit 20 and flagged it for the finder of fact quote greatly diminishes the likelihood that any false testimony affected the judgment. That's Coleman 914 F3 at 513. In NAPU itself by contrast the truth was unknown to the defense and never learned by the jury. Furthermore we don't have to speculate about the likelihood of the false testimony affecting the verdict because we know from Judge Pepper that the she explained that in detail on pages 519 and 520 of the trial transcript. So finally that brings us to plain error which is sort of a last portal that the defendant has to go through in order to succeed with a NAPU claim here. His NAPU claim is debatable at best and therefore it's not a plain error and as I've discussed the fact that the defense attorney knew about the problem and allowing her to respond in this case because it was a bench trial on the record all of that makes it impossible I think to say that the defendant was deprived of substantial rights or that the admission of this exhibit calls into question the fairness and integrity of the proceedings. So for all of those reasons I'm happy to answer any further questions but we would ask you to affirm Mr. Medina's conviction. No questions? Thank you. Thank you. I first will address the government's argument about the fact that there was no proper I guess objection made no cross-examination about it and there's a reason for that is because it wasn't flagged for us until well into the trial and so I guess it's not unusual that little you know things like this are missed by both counsel but once it did become clear and it was flagged the government and the district court basically ignored it. They basically brushed it aside. In fact the government I mean excuse me the I'm sorry I did and the and so if there's a fault for not making a proper objection I'll definitely take that. So but the government in introducing these four exhibits if you read the trial transcript about the introduction of them through both officer Nunes Rosado and Mr. Duenas it's a very it's very interesting because the council for the government clearly recognized the problem with exhibit 20 especially with Mr. Duenas. They went through exhibit 17 exhibit 18 exhibit 19. Did you do these three? Yes. Then he stands in exhibit 20 begins to talk about exhibit 20 never asked him about it. With officer Rosado that was before Mr. Duenas he just went through and went through all all of them in order. When he argued he specifically didn't talk about anything but 17 to 19. So they were aware of the problem that much was clear. So to say that there was well my time's just about out. So I would respectfully ask this court to reverse Mr. Medina's conviction on the grounds that no reasonable juror could have found him guilty beyond a reasonable doubt with the exclusion of exhibit 17 to 20 and it was clear error to admit them and base a verdict on them. Alternatively that Mr. Medina's rights to due process under the 5th and 14th amendment was violated by the knowing use of false testimony. Thank you. Thank you counsel. Thanks to both counsel and the case is taken under advisement. Court will be in recess.